IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
AIKEN DIVISION

| | | |
|---|---|---|
| Troy Hingleton, | ) | C/A No.: 1:12-2892-SVH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | ORDER |
| Carolyn W. Colvin, Acting | ) | |
| Commissioner of Social Security | ) | |
| Administration,[1] | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This appeal from a denial of social security benefits is before the court for a final

order pursuant to 28 U.S.C. § 636(c), Local Civil Rule 73.01(B) (D.S.C.), and the

Honorable R. Bryan Harwell's order dated January 31, 2013, referring this matter for

disposition. [Entry #6]. The parties consented to the undersigned United States

Magistrate Judge's disposition of this case, with any appeal directly to the Fourth Circuit

Court of Appeals.

Plaintiff files this appeal pursuant to 42 U.S.C. § 405(g) of the Social Security Act

("the Act") to obtain judicial review of the final decision of the Commissioner of Social

Security ("Commissioner") denying the claim for disability insurance benefits ("DIB")

and Supplemental Security Income ("SSI"). The two issues before the court are whether

the Commissioner's findings of fact are supported by substantial evidence and whether

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Fed. R. Civ. P. 25(d), Carolyn W. Colvin is substituted for Commissioner Michael J. Astrue as the defendant in this lawsuit.

she applied the proper legal standards.  For the reasons that follow, the court affirms the Commissioner's decision.

I.      Relevant Background

      A.      Procedural History

On June 9, 2008, Plaintiff filed applications for DIB and SSI in which he alleged his disability began on February 4, 2006.  Tr. at 56–57, 405–08.  His applications were denied initially and upon reconsideration.  Tr. at 35–36, 403–04.  On November 3, 2010, Plaintiff had a hearing before Administrative Law Judge ("ALJ") Arthur Conover.  Tr. at 421–43 (Hr'g Tr.).  At the hearing, Plaintiff amended his alleged onset date to March 30, 2006.  Tr. at 434.  The ALJ issued an unfavorable decision on November 19, 2010, finding that Plaintiff was not disabled within the meaning of the Act.  Tr. at 15–26. Subsequently, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner for purposes of judicial review. Tr. at 7–9.  Thereafter, Plaintiff brought this action seeking judicial review of the Commissioner's decision in a complaint filed on October 8, 2012.  [Entry #1].

      B.      Plaintiff's Background and Medical History

            1.      Background

Plaintiff was 48 years old at the time of the hearing.  Tr. at 424.  He received a graduate equivalency diploma ("GED").  Tr. at 426.  His past relevant work ("PRW") was as a kitchen helper.  Tr. at 439.  He alleges he has been unable to work since March 30, 2006.  Tr. at 434.

2.    Medical History

Neither party summarized Plaintiff's medical history, instead relying on the summary provided by the ALJ. Thus, the undersigned incorporates herein the ALJ's summary of the medical evidence. Tr. at 18–22, 24.

C.    The Administrative Proceedings

1.    The Administrative Hearing

a.    Plaintiff's Testimony

At the hearing on November 3, 2010, Plaintiff testified that he lived with his mother and father, but stated that he had lived by himself in a rooming house in 2008 before moving back in with his parents for financial reasons. Tr. at 424–25. He reported he last worked about six weeks after an on-the-job fall in February 2006. Tr. at 428. He stated that even after his surgery in May 2007, he suffered from back pain, going into his right leg and lower back. Tr. at 429–30. He said he could lift small items, but that a gallon of milk was about the heaviest thing he would lift. Tr. at 430–431, 438. Plaintiff reported that his right leg would become numb after he stood for more than 20–30 minutes, although he could sit down and stretch it out to try and get the feeling back. Tr. at 436–37. Plaintiff reported that beginning in February 2010, he saw Stewart Darby, Ph.D., P.A.-C, for back pain and a headache episode, but that he had not had headaches since that time. Tr. at 431, 437. He said he took Vicodin and Celebrex. Tr. at 432. He stated that he had developed depression due to an inability to take care of himself and his daughter. Tr. at 430. Plaintiff reported helping with household duties, including making

3

his bed, washing dishes, and vacuuming, and he played chess with his brother.  Tr. at

433–34, 436.

### b.    Vocational Expert Testimony

Vocational Expert ("VE") Robert Brabham reviewed the record and testified at the

hearing.  Tr. at 439.  The VE categorized Plaintiff's PRW as a kitchen helper as medium,

unskilled work.  Tr. at 439.  In response to the hypothetical presented by the ALJ, the VE

testified that Plaintiff could not perform his PRW, but could perform the jobs of machine

tender, assembler, and surveillance monitor.  Tr. at 440–41.

### 2.    The ALJ's Findings

In his decision dated November 19, 2010, the ALJ made the following findings of

fact and conclusions of law:

1.    The claimant meets the insured status requirements of the Social Security Act through September 30, 2010.
2.    The claimant has not engaged in substantial gainful activity since March 30, 2006, the amended alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).
3.    The claimant has the following severe impairments: degenerative disc disease, depression, and pain disorder (20 CFR 404.1520(c) and 416.920(c)).
4.    The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
5.    After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform work as defined in 20 CFR 404.1567(a) and 416.967(a) except no lifting and/or carrying over 20 pounds occasionally and 10 pounds frequently; no standing and/or walking over 2 hours in an 8-hour workday; he can sit at least 6 hours in an 8 hour day; no crawling or climbing of ladders, ropes, or scaffolds; only occasional climbing of ramps or stairs, balance, stoop, kneel and crouch; he would need to avoid exposure or vibrations and heights; he would require a sit/stand option; and he would be limited to the performance of simple, routine work with no interaction with the public as customers.

6.     The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7.     The claimant was born on June 19, 1962 and was 43 years old, which is defined as a younger individual age 18–44, on the alleged disability onset date.  The claimant subsequently changed age category to a younger individual age 45–49 (20 CFR 404.1563 and 416.963).

8.     The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.     Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled (20 CFR 404.1568 and 416.968).

10.    Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11.    The claimant has not been under a disability, as defined in the Social Security Act, from March 30, 2006, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

Tr. at 17–26.

II.    Discussion

Plaintiff alleges the Commissioner erred for the following reasons:

1)     the ALJ did not properly assess Plaintiff's medically-determinable impairments;

2)     the ALJ erred in finding that Plaintiff did not meet any listing;

3)     the ALJ improperly evaluated the opinion evidence;

4)     the ALJ failed to properly assess Plaintiff's credibility; and

5)     the ALJ did not properly evaluate Plaintiff's educational and vocational factors.

The Commissioner counters that substantial evidence supports the ALJ's findings and that the ALJ committed no legal error in his decision.

A.    Legal Framework

1.    The Commissioner's Determination-of-Disability Process

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability."  42 U.S.C. § 423(a).  Section 423(d)(1)(A) defines disability as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months.

42 U.S.C. § 423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of five sequential questions.  *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 460 (1983) (discussing considerations and noting "need for efficiency" in considering disability claims).  An examiner must consider the following:  (1) whether the claimant is engaged in substantial gainful activity; (2) whether he has a severe impairment; (3) whether that impairment meets or equals an impairment included in the Listings;[2] (4) whether such

---

[2] The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") the Agency considers disabling without the need to assess whether there are any jobs a claimant could do. The Agency considers the Listed impairments, found at 20 C.F.R. part 404, subpart P, Appendix 1, severe enough to prevent all gainful activity.  20 C.F.R. § 404.1525.  If the medical evidence shows a claimant meets or equals all criteria of any of the Listed impairments for at least one year, he will be found disabled without further assessment.  20 C.F.R. § 404.1520(a)(4)(iii). To meet or equal one of these Listings, the claimant must establish that his impairments match several specific criteria or be "at least equal in severity and duration to [those] criteria."  20 C.F.R. § 404.1526; *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (noting the burden is on claimant to establish his impairment is disabling at Step 3).

impairment prevents claimant from performing PRW;[3] and (5) whether the impairment prevents him from doing substantial gainful employment.  *See* 20 C.F.R. § 404.1520. These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis.  If a decision regarding disability may be made at any step, no further inquiry is necessary.  20 C.F.R. § 404.1520(a)(4) (providing that if Commissioner can find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step).

A claimant is not disabled within the meaning of the Act if he can return to PRW as it is customarily performed in the economy or as the claimant actually performed the work.  *See* 20 C.F.R. Subpart P, § 404.1520(a), (b); Social Security Ruling ("SSR") 82–62 (1982).  The claimant bears the burden of establishing his inability to work within the meaning of the Act.  42 U.S.C. § 423(d)(5).

Once an individual has made a prima facie showing of disability by establishing the inability to return to PRW, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy.  To satisfy that burden, the Commissioner may obtain testimony from a VE demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to PRW.  *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002).  If the Commissioner satisfies that burden, the claimant must then establish that he is unable to perform other work.  *Hall v.*

---

[3] In the event the examiner does not find a claimant disabled at the third step and does not have sufficient information about the claimant's past relevant work to make a finding at the fourth step, he may proceed to the fifth step of the sequential evaluation process pursuant to 20 C.F.R. § 404.1520(h).

*Harris*, 658 F.2d 260, 264–65 (4th Cir. 1981); *see generally Bowen v. Yuckert*, 482 U.S. 137, 146. n.5 (1987) (regarding burdens of proof).

### 2.     The Court's Standard of Review

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner [] made after a hearing to which he was a party."   42 U.S.C. § 405(g). The scope of that federal court review is narrowly-tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case.  *See id.*, *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002) (*citing Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

The court's function is not to "try these cases de novo or resolve mere conflicts in the evidence."  *Vitek v. Finch*, 438 F.2d 1157, 1157–58 (4th Cir. 1971); *see Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (*citing Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)).   Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence.  "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson*, 402 U.S. at 390, 401; *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005).   Thus, the court must carefully scrutinize the entire record to assure there is a sound foundation for the Commissioner's findings and that her conclusion is rational.  *See Vitek*, 438 F.2d at 1157–58; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964).   If there is substantial evidence to support the decision of the Commissioner, that decision must be

8

affirmed "even should the court disagree with such decision." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

      B.      Analysis

              1.      Consideration of Impairments

After first noting the impairments that the ALJ found to be severe, Plaintiff generally argues that the ALJ "failed to properly assess" the effects of his stenosis, chronic neck and back pain, status post spinal fusions, status post stroke, chronic headaches, and anxiety. [Entry #9 at 2]. Plaintiff's argument includes no citations or substantive contentions. It is unclear at what stage he asserts these alleged impairments should have been considered or how he believes proper consideration of the alleged impairments would have altered the ALJ's decision. Furthermore, the ALJ found that Plaintiff suffered from the severe impairments of degenerative disc disease, depression, and pain disorder. The severe impairments of degenerative disc disease and pain disorder reasonably encompass the alleged impairments of stenosis, chronic neck and back pain, and status post spinal fusions. With regard to his alleged impairment of chronic headaches, Plaintiff testified at the hearing that he no longer had headaches. Tr. at 21. As to Plaintiff's contention that he is "status post stroke," the ALJ noted in his decision that there is no documented medical evidence that Plaintiff experienced a stroke (Tr. at 21), and Plaintiff refers to no evidence to support this alleged impairment.

Plaintiff's final alleged impairment is anxiety.  The Commissioner contends that the only evidence of anxiety in the record is in the reports of Robert Brabham, Ph.D., [4] and William Gore, Ph.D.   [Entry #11 at 7].   Dr. Brabham noted that Plaintiff was "anxious about his situation" and "anxious about the future."  Tr. at 251.  Dr. Brabham diagnosed Plaintiff with generalized anxiety disorder, but assessed no related functional limitations.  Tr. at 252.  Dr. Gore likewise diagnosed generalized anxiety disorder, but indicated that Plaintiff had "no cognitive or emotional limitations with respect to simple or complex tasks, concentration, persistence, and pace."  Tr. at 290–91.  Thus, there is no record evidence demonstrating that Plaintiff's alleged anxiety caused any functional limitations.  For this reason, even if the ALJ erred in failing to reference anxiety at step two, the court finds the error to be harmless.  *See Mickles v. Shalala*, 29 F.3d 918, 921 (4th Cir. 1994) (affirming denial of Social Security benefits where the ALJ erred in pain evaluation because "he would have reached the same result notwithstanding his initial error"); *see also Plowden v. Colvin*, C/A No. 1:12-2588, 2014 WL 37217, at *4 (D.S.C. Jan. 6, 2014) (noting that the Fourth Circuit has applied the harmless error analysis in the context of Social Security disability determinations).

For the foregoing reasons, the court finds that the ALJ performed an adequate assessment of Plaintiff's impairments.

---

[4] Dr. Brabham is the father of the VE who testified at the hearing.  In supplemental briefing regarding this familial relationship, Plaintiff states that he was aware of the relationship and does not believe that the relationship between the two men should impact the court's review of the ALJ's decision.  [Entry #21].

2.    Listing Analysis

Plaintiff next generally argues that he "has an impairment or combination of impairments listed in or medically equal to one listed in 20 C.F.R. Part 404, Subpart P, Appendix 1." [Entry #9 at 2]. He does not specify which listing he believes he meets. Later in his brief, however, he references the opinion of Dr. Darby, who opined that Plaintiff met Listings 1.04 (disorders of the spine) and 11.04 (central nervous system vascular accident). [Entry #9 at 4]. Based on this reference, it appears that Plaintiff is arguing that the ALJ erred in concluding that Plaintiff does not meet Listings 1.04 and 11.04.

At step three of the sequential evaluation, the Commissioner must determine whether the claimant has an impairment that meets or equals the requirements of one of the impairments listed in the regulations and is therefore presumptively disabled. "For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (emphasis added). It is not enough that the impairments have the diagnosis of a listed impairment; the claimant must also meet the criteria found in the listing of that impairment. 20 C.F.R. §§ 404.1525(d), 416.925(d). The Commissioner compares the symptoms, signs, and laboratory findings of the impairment, as shown in the medical evidence, with the medical criteria for the listed impairment. 20 C.F.R. §§ 404.1508, 416.908. The Commissioner can also determine that the claimant's impairments are medically equivalent to a listing, which occurs when an impairment is at least equal in severity and duration to the criteria of a listing. 20 C.F.R. §§ 404.1526(a), 416.926(a).

11

Listing 1.04 addresses specific disorders of the spine, including a herniated nucleus pulposus, spinal stenosis, and degenerative disc disease, which result in a compromise of the nerve root.  20 C.F.R. Pt. 404, Subpt. P, Appx. 1, § 1.04.  A claimant with such a spinal impairment may qualify under this Listing for disability if there is (a) evidence of nerve root compression charaterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss accompanied by sensory or reflex loss, and, if involvement of the lower back, positive straight leg raises; or (b) spinal arachnoiditis; or (c) lumbar spine stenosis, resulting in pseudoclaudication, established by imaging, manifested by chronic non-radicular pain and weakness that results in an inability to ambulate effectively.  *Id.*  Listing 11.04 provides that the required level of severity for central nervous system vascular accident is met when a claimant has one of the following more than three months post-vascular accident: (a) sensory or motor aphasia resulting in ineffective speech or communication; or (b) significant and persistent disorganization of motor function in two extremities, resulting in sustained disturbance of gross and dexterous movements, or gait and station.  *Id.* at § 11.04.

Here, Plaintiff has failed to cite to any evidence, other than Dr. Darby's opinion, to demonstrate that he meets the requirements of Listings 1.04 or 11.04.  With regard to Dr. Darby's opinion, the ALJ stated that because Dr. Darby is not a medical doctor, he was not qualified to give an expert opinion on whether Plaintiff met these Listings, which are related to Plaintiff's physical impairments.  Tr. at 21.  The ALJ noted that the longitudinal record of treatment does not support Dr. Darby's opinion and stated that there is no medical evidence that Plaintiff experienced a stroke, nerve root compression,

arachnoiditis, or lumbar spinal stenosis, or that he suffers from an inability to ambulate effectively. *Id.* The court finds the ALJ reasonably discounted Dr. Darby's opinion. The court further finds that the ALJ adequately addressed Listings 1.04 and 11.04 and that his conclusion that Plaintiff's impairments did not meet any listing is supported by substantial evidence.

### 3.     Evaluation of Opinion Evidence

Plaintiff also asserts that the ALJ erred in discounting the opinion of examining consultant Dr. Brabham. [Entry #9 at 2–3]. On December 14, 2007, Dr. Brabham performed an independent psychological and vocational evaluation of Plaintiff at the request of Plaintiff's attorney and related to Plaintiff's workers' compensation case. Tr. at 246. Dr. Brabham noted that Plaintiff was injured after a fall at work in February 2006 and that he underwent back surgery in 2007. *Id.* Plaintiff reported severe back pain for several days after doing yard work and stated that he spent 25% of a typical eight-hour day resting, reclining, or lying in bed. Tr. at 247. He said that he can stand, walk, and sit for 15 minutes before pain requires him to change positions and that he experiences debilitating pain for hours each day. Tr. at 247, 250–51.

Dr. Brabham diagnosed Plaintiff with a pain disorder, generalized anxiety disorder, and depressive disorder. Tr. at 252. However, Dr. Brabham opined that Plaintiff's academic skills are sufficient for possible use in settings in which such basic skills are needed, but that, to use such skills, Plaintiff first had to be able to complete a full eight-hour workday in an upright position. *Id.* Dr. Brabham further opined that Plaintiff would have several positive factors in determining his vocational prognosis but

13

for the presence of his continued major restrictions to less than even the full range of sedentary work.  Tr. at 252.  Dr. Brabham noted that Plaintiff's severe levels of pain rendered him unable to complete a full day of work, but, once able to sustain sedentary work, he might benefit from additional formal training.  Tr. at 252–53.  The doctor also noted Plaintiff indicated pain severe enough to interfere with his ability to report to a job site at least one to two days per week.  Tr. at 253.  Dr. Brabham stated that Plaintiff had not attained sufficient pain management results to permit him to return to full-time employment and opined that Plaintiff was unable to engage in full-time employment in his present medical condition.  *Id.*

The ALJ afforded Dr. Brabham's opinion little weight.  The ALJ found that the opinion seemed to be based on Plaintiff's reported complaints and not on the overall evidence of record.  Tr. at 20.  He noted that Dr. Brabham was not a treating physician and that his opinion was not supported by the longitudinal treatment record of Dr. James O'Leary, Plaintiff's treating orthopedist who opined that Plaintiff could perform sedentary work.  Tr. at 19–20.  Finally, the ALJ noted that giving Dr. Brabham's opinion controlling weight would, in effect, give him the authority to decide the issue of disability, which is an issue reserved to the Commissioner.  Tr. at 20.

Plaintiff contends that Dr. Brabham's opinion relied both on the medical evidence of record and Plaintiff's self-assessment and that the ALJ erred in finding otherwise. [Entry #12 at 1–2].  While Dr. Brabham referenced and summarized the medical evidence, his findings regarding Plaintiff's extreme physical limitations appear to be based on Plaintiff's reports because the medical records do not set forth such limitations.

14

In fact, Plaintiff's treating orthopedist, Dr. O'Leary, released Plaintiff to "moderate/sedentary duty" in October 2007. Tr. at 273. Furthermore, a plain reading of Dr. Brabham's opinion reveals that his conclusions were premised on Plaintiff's self-reported limitations. *See, e.g.*, Tr. at 252 ("[Plaintiff's] potential to learn other less demanding duties is at present eliminated by his inability to sustain a full workday due to his continued severe pain on a regular basis, and by the need to recline for hours each day."); Tr. at 253 ("[Plaintiff] indicated that he experiences pain, primarily in his back at such levels of severity so as to interfere with is ability to report to any potential job site at least 1–2 days a week. This would, of course, greatly exceed the average number of personal/sick days provided by the average employer in SC."). For these reasons, the undersigned finds that the ALJ was justified in discounting Dr. Brabham's opinion because it was based on Plaintiff's subjective complaints.

Plaintiff next asserts that the ALJ erred in discounting Dr. Brabham's opinion on the grounds that it is inconsistent with that of Dr. O'Leary. [Entry #9 at 3]. Plaintiff contends that Dr. O'Leary did not address Plaintiff's mental impairments in rendering his opinion, whereas Dr. Brabham considered both Plaintiff's mental and physical impairments and found that Plaintiff's mental impairments rendered him unable to work. *Id.* Dr. Brabham's opinion belies Plaintiff's argument on this point. The opinion does not state or suggest that Plaintiff's mental impairments render him unable to work. Rather, Dr. Brabham's opinion that Plaintiff is unable to work is based solely on his physical limitations. Thus, the ALJ's comparison of the two opinions was an apples-to-apples comparison, and the ALJ did not err in finding the opinions inconsistent.

15

To the extent Plaintiff generally argues that Dr. Brabham's opinion was supported by the overall medical evidence, that argument is unavailing because it is not within the court's province to reweigh the evidence. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (holding that it is the ALJ's responsibility, not the court's, to determine the weight of evidence and resolve conflicts of evidence). As he is required to do, the ALJ offered valid reasons for discounting the opinion of Dr. Brabham. Because the reasons the ALJ provided were valid and supported by the record, the court finds that his decision to discount the opinion is supported by substantial evidence.

### 4.     Credibility Assessment

Plaintiff next argues that the ALJ erred in discounting Plaintiff's subjective statements because those statements were "directly in line with the medical evidence and opinions of several doctors." [Entry #9 at 4–5]. The Commissioner responds that the ALJ properly evaluated Plaintiff's credibility. [Entry #11 at 12–14].

Prior to considering a claimant's subjective complaints, an ALJ must find a claimant has an underlying impairment that has been established by objective medical evidence that would reasonably be expected to cause subjective complaints of the severity and persistence alleged. *See* 20 C.F.R. §§ 404.1529, 416.929; SSR 96-7p; *Craig*, 76 F.3d 585, 591–96 (4th Cir. 1996) (discussing the regulation-based two-part test for evaluating pain). The first part of the test "does not . . . entail a determination of the intensity, persistence, or functionally limiting effect of the claimant's asserted pain." 76 F.3d at 594 (internal quotation omitted). Second, and only after claimant has satisfied the threshold inquiry, the ALJ is to evaluate "the intensity and persistence of the claimant's

16

pain, and the extent to which it affects her ability to work." *Id.* at 595. This second step requires the ALJ to consider the record as a whole, including both objective and subjective evidence, and SSR 96-7p cautions that a claimant's "statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence." SSR 96-7p, ¶ 4.

If an ALJ rejects a claimant's testimony about his pain or physical condition, he must explain the bases for such rejection to ensure that the decision is sufficiently supported by substantial evidence. *Hatcher v. Sec'y, Dep't of Health & Human Servs.*, 898 F.2d 21, 23 (4th Cir. 1989). "The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p, ¶ 5. In evaluating the intensity, persistence, and limiting effects of an individual's symptoms and the extent to which they limit an individual's ability to perform basic work activities, adjudicators are to consider all record evidence, which can include the following: the objective medical evidence; the individual's activities of daily living ("ADLs"); the location, duration, frequency, and intensity of the individual's pain or other symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; any measures

17

other than treatment the individual uses to relieve pain or other symptoms; and any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.  SSR 96-7p.

Here, after setting forth the applicable regulations, the ALJ considered Plaintiff's subjective claims under the required two-step process.  *See Craig*, 76 F.3d at 591–96. The ALJ found Plaintiff's impairments could reasonably be expected to cause some of the symptoms he alleged, but determined that Plaintiff's statements "concerning the intensity, persistence and limiting effects" of his symptoms were "not credible to the extent" they were inconsistent with the ALJ's determination of his RFC.  Tr. at 23.

In discounting Plaintiff's credibility, the ALJ first summarized Plaintiff's testimony regarding his ADLs and found that they were not indicative of a significant restriction of activities or constriction of interests.  Tr. at 24.  Pursuant to SSR 96-7p, an ALJ is instructed to consider a claimant's ADLs, and the ALJ did not err in doing so in this case.  The ALJ also noted Plaintiff's testimony that when he experienced numbness in his leg, he would address it by sitting down and stretching, and that there is no record support for his allegation that he can lift no more than a gallon of milk.  Tr. at 23–24. Finally, the ALJ observed that Plaintiff "betrayed no evidence of pain or discomfort while testifying at the hearing."  Tr. at 24.  The ALJ noted that the hearing was short-lived and could not be considered a conclusive indicator of Plaintiff's overall level of pain and functioning on a daily basis, but afforded Plaintiff's appearance during the hearing some slight weight in the credibility analysis.  *Id.*

18

Plaintiff fails to identify what he believes the ALJ specifically did wrong in conducting the credibility analysis. Rather, his argument appears to be an invitation for the court to reweigh the evidence, which the court is not permitted to do. *See Hays*, 907 F.2d at 1456. Because the ALJ articulated valid grounds for discounting Plaintiff's credibility and Plaintiff has failed to make any meaningful argument to the contrary, the court finds that the ALJ did not err in his credibility determination.

5.    Evaluation of Plaintiff's Educational and Vocational History

Finally, Plaintiff argues that the ALJ failed to properly take into consideration his education and work experience. [Entry #9 at 4]. With regard to education, Plaintiff disputes the ALJ's finding that he has at least a high school education. *Id.* Plaintiff argues that because he left school in eleventh grade and later earned his GED, he would be considered to have a limited education. *Id.* A GED, however, is equivalent to a high school education and Plaintiff cites to no authority suggesting that, in the Social Security context, a GED should be considered a limited education. Moreover, even if Plaintiff's contention that he should be considered to have a limited education is accepted as true, corresponding Medical-Vocational Rules 201.24 and 201.18 would still not direct a disability finding, and, thus, would not change the applied framework. *See* 20 C.F.R. Part 404 Subpart P, Appendix 2, Table 1.

Plaintiff's conclusory argument regarding his work history is similarly unavailing. The ALJ accurately stated that Plaintiff cannot perform his PRW and that his PRW is unskilled. Tr. at 24–25. Plaintiff has failed to articulate any error by the ALJ with regard to these findings.

20

III.    Conclusion

The court's function is not to substitute its own judgment for that of the Commissioner, but to determine whether her decision is supported as a matter of fact and law.  Based on the foregoing, the undersigned affirms the Commissioner's decision.

IT IS SO ORDERED.

February 4, 2014                                    Shiva V. Hodges
Columbia, South Carolina                           United States Magistrate Judge